IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TADEUSZ PALKA, <br><br> Plaintiff, <br> v. <br><br> COOK COUNTY SHERIFF THOMAS DART, COOK COUNTY SHERIFF POLICE DETECTIVE ROGER SHELTON, Individually and JAMES DAVIS, Individually, and TWO UNKNOWN CHICAGO POLICE OFFICERS, Individually, believed to be from AREA FIVE POLICE HEADQUARTERS, and the CITY OF CHICAGO, <br><br> Defendant. | Case No. 07 C 5432 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Tadeusz Palka ("Palka") filed a Complaint against Cook County Sheriff Police Detective Roger Shelton ("Shelton"), Cook County Sheriff Police Detective James Davis ("Davis"), Two Unknown Chicago Police Officers ("unknown officers"), and the Chicago Police Department alleging a violation of 42 U.S.C. § 1983. Palka filed a First Amended Complaint against Cook County Sheriff Thomas Dart ("Dart"), Shelton, Davis, the unknown officers, and the City of Chicago ("the City"). Shelton, Davis, Dart, and the City moved to dismiss Palka's First Amended Complaint.

**STATEMENT OF FACTS**

Palka alleges that his son, Peter J. Palka ("Peter Palka"), was terminated from the Chicago Police Academy on February 1, 2007 due to his national origin and race. First Amend. Cmplt. at ¶¶5-6. Palka spoke to Assistant Deputy Superintendent Matthew Tobias, the individual who

1

terminated Peter Palka, and asked him to allow Peter Palka back in class. *Id*. at ¶7. Tobias refused, and Palka retained counsel to look into the matter. *Id*. at ¶12. Palka met with the attorney on May 7, 2007, and it was his understanding that the attorney would discuss the matter with someone at the Police Department on Thursday, May 10, 2007. *Id*. at ¶13.

On May 10, 2007, at approximately 10:30 p.m. when Paulka arrived home, he discovered two uniformed Chicago police officers in unmarked squad cars waiting for him. *Id*. at ¶14. Prior to Palka's arrival, the officers woke up his neighbor to ask if Palka was at home. *Id*. at ¶14. When Palka pulled into his driveway, the officers asked to speak with him. *Id*. at ¶15. The officers then accused Palka of making threatening phone calls to a school attended by Tobias's children, an accusation that Palka denied. *Id*. at ¶¶18-20. The officers also told Palked that they knew his son was kicked out of the police academy and that he should not "push" on that. *Id*. at ¶23. The police then left Palka's home. *Id*. at ¶26.

The next day, May 11, 2007, Palka saw Chief Edward Carek ("Carek") and told him about the officers' visit the night before. *Id*. at ¶27. Carek said, "This is a serious thing if they came by your house." *Id*. at ¶29. Palka then went to Edward Wodnicki ("Wodnicki"), his supervisor, and told him about the prior evening. *Id*. at ¶30. Wodnicki told Palka not to worry. *Id*. at ¶31. Later that day, the Director of the Cook County Sheriff's Department Internal Affairs Division, Raymond T. Zene ("Zene"), visited Wodnicki. *Id*. at ¶32. Palka was then called to Wodnicki's office, where Zene took his badge and identifications. *Id*. at ¶34. Zene told Palka that a "big wheel" at the Chicago Police Department told him to do this. *Id*. at ¶36. Wodnicki stated, "What did I tell you? You tried to help your son and you got screwed." *Id*. at ¶37. An Internal Affairs investigator later

took Palka downstairs to "show everyone" that he was no longer a deputy. *Id.* at ¶43. Palka became sick over his situation and his doctor put him on medical leave. *Id.* at ¶¶48-49.

The Inspector General later required Palka to report to his office to discuss the phone calls. *Id.* at ¶50. There, detectives Shelton and Davis claimed that Palka had told them that he was sorry and would not make any more phone calls. *Id.* at ¶52. Palka asserted that he never made the calls nor did he say such a thing. *Id.* at 53. The detectives spoke to Palka's lawyer and told her that they would drop the charges if Palka resigned from the Sheriff's Office. Palka refused the offer. *Id.* at ¶¶55-58.

Shelton and Davis later visited Palka's friend, Ronnie Gaines ("Gaines"), and asked him about Palka. *Id.* at ¶¶59-62. Gains told the detectives that Palka had not talked to him about making calls to Tobias's children's school. *Id.* at ¶¶66-67. The detectives then tried to intimidate Gaines, implying that he would be charged with a crime if he did not say anything negative about Palka. *Id.* at ¶¶65, 68. Palka claims that the detectives are attempting to intimidate many of his friends and associates. *Id.* at ¶69. Palka asserts that he is being harassed because he challenged Tobias's decision to dismiss his son from the police academy. *Id.* at ¶71.

## **STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

3

However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## ANALYSIS

### Section 1983

"In order to state a claim pursuant to 42 U.S.C. § 1983, the plaintiff[ ] must allege that a government official, acting under color of state law, deprived [him] of a right secured by the Constitution of laws of the United States." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7thCir. 2007) (*citing Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7thCir. 2007)). "Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced." *Bublitz v. Cottey*, 327 F.3d 485, 488 (7thCir. 2003) (*citing Ledford v. Sullivan*, 105 F.3d 354, 356 (7thCir. 1997)). Section 1983 "provides a remedy for deprivations of *specific* constitutional rights, not generalized allegations of constitutional deprivations. *Trautvetter v. Quick*, 916 F.2d 1140, 1148 (7thCir. 1990)(emphasis in original) (*citing Wilson v. Civil Town of Clayton*, 839 F.2d 375, 379 (7thCir. 1988)). The specific right infringed provides directs the Court "to the proper doctrinal framework in which to address the claims." *Id*. (*citing Wilson v. Williams*, 83 F.3d 870, 874 (7thCir. 1996)).

Here, Palka makes only a general allegation of a violation of Section 1983 stating, "This is a complaint for harassment under color of state law pursuant to 42 U.S.C. § 1983." First Am. Cmplt.

4

at ¶ 1.[1] Nowhere in the First Amended Complaint does he specifically state or even clearly indicate the rights of which he was deprived, leaving the Court and the Defendants to speculate as to what claims he intends to bring and therefore to speculate as to the framework in which to analyze his claims. Palka's general allegation without any indication of which rights he believes have been violated renders his First Amended Complaint deficient as a matter of law. *Trautvetter*, 916 F.2d at 1148 (general allegations of infringement of a constitutional right insufficient but complaint rendered sufficient by specific allegations of sexual harassment); *Comito v. Crowe*, No. 98 C 1250, 1999 WL 168464, *2-3 (N.D.Ill. 1999) (general allegation of violation of "civil rights" insufficient). Defendants' Motions to Dismiss are granted.

**Qualified Immunity**

Defendants Shelton and Davis raise the defense of qualified immunity. Under the doctrine of qualified immunity, "[g]overnmental actors performing discretionary functions are entitled to qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity analysis involves a two-part inquiry. First, does the plaintiff present evidence that, taken in the light most favorable to the plaintiff, would allow a reasonable fact finder to determine that he has been deprived of a constitutional right *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Sallenger*, 473 F.3d at 739. Second, if so, was the constitutional right at issue clearly established at the time of the alleged violation. *Saucier*, 533 U.S.

---

[1] Palka makes additional allegations in his reply to the Motions to Dismiss. This Court declines to address these allegations.

at 201. As discussed above, Palka has not adequately alleged the violation of a constitutional right. Thus, this Court is unable to properly analyze the issue of qualified immunity at this juncture.

**Municipal Liability**

Palka seeks to hold Cook County Sheriff Thomas Dart and the City of Chicago liable. A municipal government cannot be held liable under §1983 "unless the deprivation of constitutional rights is caused by municipal policy or custom." *Harden Food & Liquor, Inc. V. City of Chi.*, 2004 U.S. Dist. LEXIS 25934, 4 (N.D. Ill. 2004); (*citing Kujawski v. Board of Comm'rs of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir. 1999)). To establish a policy or custom, a plaintiff must allege: (1) an express policy; (2) a widespread practice that is so permanent and well-settled to have the force of law; or (3) that the constitutional injury was caused by a person with final policymaking authority. *Id.*; *see also Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994). With regard to the City of Chicago, Palka states only that "the fact that some high ranking Chicago Police Department official made a phone call to get plaintiff de-deputized implicates the Cit [sic] of Chicago as they work for the Chicago Police Department directly." First Am. Cmplt. at ¶ 74. With regard to Dart, Palka states only that "the actions of the subordinates in the Cook County Sheriff's office implicate that Cook County Sheriff as they work for the Sheriff and are supervisors under him." *Id.* at ¶ 75. These conclusory allegations do not state facts sufficient to allege a policy or widespread practice nor the involvement of a person with final policymaking authority and thus are insufficient to allege municipal liability.[2]

---

[2] To the extent Palka seeks to establish Dart's liability based on an allegation that he supervised Shelton and Davis, supervisory authority may only be established under Section 1983 if the conduct at issue either occurred at the supervisor's direction or with the supervisor's knowledge and consent or if the supervisor turned a blind eye to the conduct. *Nanda v. Moss*, 412 F.3d 836, 842 (7thCir. 2005) (*citing Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7thCir. 1988)).

For the reasons stated above, Defendants' Motions to Dismiss are granted without prejudice. Palka may refile within 21 days of the issuance of this opinion.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: April 11, 2008