IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TADEUSZ PALKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 07 C 5432 |
| | ) | |
| COOK COUNTY, COOK COUNTY SHERIFF | ) | Judge Virginia M. Kendall |
| THOMAS DART, THOMAS KINSELLA, | ) | |
| former COOK COUNTY SHERIFF'S | ) | |
| DEPARTMENT INSPECTOR GENERAL, | ) | |
| COOK COUNTY DETECTIVE ROGER | ) | |
| SHELTON, COOK COUNTY SHERIFF | ) | |
| ASSISTANT GENERAL COUNSEL PETER | ) | |
| M. KRAMER, WILLIAM CUNNINGHAM, JR. | ) | |
| Sheriff's Department Chief of Staff, HENRY | ) | |
| BARSH, ASSISTANT EXECUTIVE | ) | |
| DIRECTOR OF THE COOK COUNTY | ) | |
| SHERIFF IAD, the city of CHICAGO, the | ) | |
| CHICAGO POLICE DEPARTMENT | ) | |
| ASSISTANT DEPUTY SUPERINTENDENT | ) | |
| CONSTANTIN ANDREWS of the First | ) | |
| Deputy's Office of the Chicago Police | ) | |
| Department, Chicago Police Headquarters, | ) | |
| CHICAGO POLICE COMMANDER JOSEPH | ) | |
| SALEMME, Commander, Area 5 Detective | ) | |
| Division, CHICAGO POLICE DEPARTMENT | ) | |
| ASSISTANT DEPUTY SUPERINTENDENT | ) | |
| MATTHEW TOBIAS of the Chicago Police | ) | |
| Education and Training Division, and | ) | |
| CHICAGO POLICE COMMANDER | ) | |
| NICHOLAS J. ROTI, formerly Commander of | ) | |
| OCD-Gang Intelligence Section of the Chicago | ) | |
| Police Department | ) | |
| | ) | |
| Defendants . | ) | |

## MEMORANDUM OPINION AND ORDER

Tadeusz Palka ("Palka") filed a Third Amended Complaint[1] against Cook County, Cook County Sheriff Thomas Dart ("Dart"), former Cook County Sheriff's Department Inspector General Thomas Kinsella ("Kinsella"), Cook County Detective Roger Shelton ("Shelton"), Cook County Sheriff Assistant General Counsel Peter M. Kramer ("Kramer"), Sheriff's Department Chief of Staff William Cunningham, Jr. ("Cunningham"), Assistant Executive Director of the Cook County Sheriff Internal Affairs Department Henry Barsh ("Barsh") (collectively, "Cook County"), the City of Chicago ("the City"), Chicago Police Department Assistant Deputy Superintendent Constantin Andrews ("Andrews"), Chicago Police Department Assistant Deputy Superintendent Matthew Tobias ("Tobias"), Chicago Police Commander Joseph Salemme ("Salemme"), and Chicago Police Commander Nicholas J. Roti ("Roti") (collectively, "Individual Defendants") alleging a violation of 42 U.S.C. § 1983. The Individual Defendants, Cook County, and the City moved to dismiss Palka's Third Amended Complaint.

## STATEMENT OF FACTS

The following facts are taken from the allegations in Palka's Complaint, which are accepted as true for purposes of deciding this motion to dismiss. Palka alleges that his son, Peter J. Palka ("Peter Palka"), was terminated from the Chicago Police Academy on February 1, 2007 due to his national origin (Polish). Third Amend. Compl. at ¶5. Palka spoke to Assistant Deputy

---

[1]Palka filed his initial Complaint on September 26, 2007. Palka filed a First Amended Complaint on December 4, 2007. This Court dismissed Palka's First Amended Complaint without prejudice on April 11, 2008. Palka filed a Second Amended Complaint on April 30, 2008, filed a corrected version of his Second Amended Complaint on May 1, 2008, and then filed a redacted version of his Second Amended Complaint on May 2, 2008. Finally, Palka filed a Third Amended Complaint on May 15, 2008, which is the subject of the Motions to Dismiss currently before this Court.

Superintendent Tobias, the individual who terminated Peter Palka, and asked him to allow Peter Palka back in class. *Id.* at ¶ 6. Tobias refused, and Palka retained counsel to look into the matter. *Id.* at ¶¶ 7-8. Palka's attorney attempted to talk to Dora Henmann ("Henmann"), the Chicago Police Academy's Firearms Instructor, about his son's termination from the Academy, but Henmann refused to discuss the matter. *Id.* at ¶¶ 9-12.

On May 9, 2007, Tobias learned that a threatening phone call was made to his children's school. *Id.* at ¶ 56. Tobias contacted Officers Andrews, Salemme, Chicago Police Commander Roti and other Chicago Police officers to investigate the phone call incident. *Id.* Tobias opened up a Chicago Police Department ("CPD") Original Case Incident Report as part of his investigation. *Id.* Tobias also visited the Park Ridge Police to report the incident. *Id.* After running checks on the phone numbers that were used to call his children's school Tobias learned that the calls came from a Cook County building. *Id.* Tobias also learned that the caller had an Eastern European accent (Polish). *Id.* Ex. C. Thinking Palka may have been the caller, Tobias ran Palka's name through the Chicago Police's Leads System. *Id.*

On the evening of May 10, 2007, at approximately 10:30 p.m. when Palka arrived home, he discovered Officers Salemme and Andrews waiting for him. *Id.* at ¶13. Prior to Palka's arrival, the officers woke up his neighbor to ask if Palka was at home. *Id.* at ¶14. When Palka pulled into his driveway, the officers asked to speak with him. *Id.* at ¶15. The officers accused Palka of making the threatening phone call to Tobias's children's school, an accusation that Palka denied. *Id.* at ¶¶ 16-19.

The officers told Palka that they knew it was him that called the school but that it was not "a big deal" and "don't do it anymore." *Id.* at ¶ 22. The officers also asked Palka if he had a son that

3

was recently kicked out of the police academy and when Palka said yes, the officers told him that he should not "push" on that and that his son was not going to get his job back. *Id.* at ¶¶ 23-25. Palka told the officers he was talking to a lawyer about his son's reinstatement, and the officers then left Palka's home. *Id.* at ¶¶ 26-27. Palka asserts that Andrews and Salemme were out of their jurisdiction when they went to question him and that their visit violated police protocol. *Id.* at ¶ 28, 30.

The next day, May 11, 2007, Palka saw Chief Edward Carek ("Carek") and told him about Andrews' and Salemmes' visit the night before. *Id.* at ¶32. Carek said, "This is a serious thing if they came by your house." *Id.* at ¶33. Palka then went to Edward Wodnicki ("Wodnicki"), his supervisor, and told him about the prior evening. *Id.* at ¶34. Wodnicki told Palka not to worry. *Id.* at ¶35. Later that day, the Director of the Cook County Sheriff's Department Internal Affairs Division ("IAD"), Raymond T. Zene ("Zene"), visited Wodnicki. *Id.* at ¶36. Tobias had filed a General Complaint Register with the Sheriff's IAD alleging that Palka had made threatening phone call to his children's school. *Id.* at ¶ 56. Tobias further stated that he was scared for his children and that Palka was angry with Tobias because Peter Palka had been terminated from the police academy. *Id.* Palka was then called to Wodnicki's office, where Zene took his badge and identifications, and put him on paid suspension. *Id.* at ¶37. Zene told Palka that a "big wheel" at the CPD told him to do this. *Id.* at ¶38. Wodnicki stated, "What did I tell you? You tried to help your son and you got screwed." *Id.* at ¶42. An Internal Affairs investigator later took Palka downstairs to "show everyone" that he was no longer a deputy. *Id.* at ¶43. Palka became sick over his situation and had do go on medical leave. *Id.* at ¶¶44.

After Palka was de-deputized, Zene summoned Palka to his office to discuss the phone call

4

allegations. *Id.* at ¶ 46. There, IAD detectives Shelton and Davis claimed that Palka had told them that he was sorry and would not make any more phone calls. *Id.* at ¶47. Palka asserted that he never made the calls nor did he say such a thing. *Id.* at ¶48. The IAD detectives spoke to Palka's lawyer Sally Ann Cromin ("Cromin") and told her that they would drop the charges if Palka resigned from the Sheriff's Office. Palka refused the offer. *Id.* at ¶¶55-58. The IAD detectives told Palka's lawyer that they were referring him to the State's Attorney's Office for criminal prosecution. *Id.* at ¶ 50. On September 5, 2007, the IAD unit met with a Cook County Assistant State's Attorney to discuss the pending charges against Palka stemming from the phone call incident. *Id.* at ¶ 56. The Assistant State's Attorney, however, never pressed charges against Palka. *Id.* at 51.

Palka claims that the IAD detectives attempted to intimidate many of his friends and associates. *Id.* at ¶52. Palka asserts that he was being harassed because he challenged Tobias's decision to dismiss his son from the police academy. *Id.* at ¶53.

In March 2008 Henry Barsh ("Barsh"), Assistant Executive Director of the IAD filed charges against Palka with the Merit Systems Protection Board ("MSPB") and recommended his termination. *Id.* at ¶ 55. After Palka was referred to the MSPB, he was approached by Carek who told him that if he retired the MSPB action would "go away" and he would receive his retirement badge and his firearms credentials like all other Sheriff retirees do. *Id.* at ¶ 57. Palka decided to resign from his position as a deputy sheriff. *Id.* at ¶ 52.

Palka alleges that the Individual Defendants abused their power when they conducted a high priority investigation concerning the phone calls to Tobias' children's school. Palka alleges that after the investigation revealed Palka's potential involvement in the phone call incident, Zene put him on paid suspension in violation of his collective bargaining agreement because Zene did not call his

5

union representative to be present during the de-deputization process and during a subsequent interview with IAD. *Id.* at 39. Palka also alleges that Zene violated his collective bargaining agreement by not giving Palka an answer about his pending investigation until March of 2008 when he was brought up on charges before the MSPB. *Id.* at 40.

## STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

I. Section 1983

In order to state a claim pursuant to 42 U.S.C. § 1983, Palka must allege that the Defendants were acting under color of state law when they deprived him of a Constitutional right. *See Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7thCir. 2007) (*citing Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7thCir. 2007)). "Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may

6

be enforced." *Bublitz v. Cottey*, 327 F.3d 485, 488 (7thCir. 2003) (*citing Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997)). To allege a §1983 violation, Palka must do more then make a general allegation that his Constitutional rights were violated, he must allege a deprivation of a specific Constitutional right. *See Trautvetter v. Quick*, 916 F.2d 1140, 1148 (7thCir. 1990) (citing *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 379 (7thCir. 1988)). Here, read charitably, Palka's Third Amended Complaint alleges a § 1983 Due Process claim, a § 1983 Occupational Liberty claim and a Monell Claim.

## A. § 1983 Due Process Claim

The Fourteenth Amendment imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Due Process Clause. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To assert a violation of the Due Process Clause, Palka must be able to show that he had a 'property interest' and that he was deprived of this interest without due process of law. *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003) (citing *Bishop v. Wood*, 426 U.S. 341, 343 (1976)).

### I. Property Interest

For his due process claim, Palka must first plead sufficient facts to show that he had a property interest. *See Phelan*, 347 F.3d at 681. Property interests are not created by the Constitution, they are created by existing rules or understandings that stem from an independent source such as state law. *See Cleveland Bd. Of Educ.v. Loudermill*, 470 U.S. 532, 538 (1985) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). A property interest can be established by demonstrating a property right in continued employment. *See Id.* In the employment context, a property interest can be created in one of two ways: (1) by an independent source such as state law;

7

or (2) by a clearly implied promise of continued employment. *See Phelan*, 347 F.3d at 681 (citing *Shlay v. Montgomery*, 802 F.2d 918, 921 (7th Cir. 1986). Palka bears the burden of proving that he has a property interest in his job. *See Krieg v. Seybold*, 481 F.3d 512, 520 (7th Cir. 2007) (holding plaintiff bears the burden that he had a property interest in his job arising out of a state statute, state or municipal regulations, or a contract with a public entity).

Here, Palka asserts that the Defendants "acting under color of state law, deprived plaintiff of his property right to remain employed as a Sheriff's Deputy with a gold badge." Compl. ¶ 59. While this Court must accept all well-pleaded facts in the complaint as true, this Court does not have to accept as true conclusory statements of law or unsupported conclusions of fact. *See Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 896 (7th Cir. 2001). Simply claiming a property right in a job without facts to support the naked conclusion is not enough to sufficiently plead a property interest. *See Lee v. County of Cook*, 862 F.2d 139, 141-42 (7th Cir. 1988) (holding that to assert a property interest a plaintiff must allege enough facts to show that she "has a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause"). Palka's Complaint sets forth no facts to show that he had a property interest in his position as a Sheriff's Deputy. Palka does not even identify the source of his alleged property interest. He does not allege that it was created by any state or city law, that he had a contract giving him tenure to remain employed at the Sheriff's office or that there was a clearly implied promise in his continued employment. *See Shlay*, 802 F.2d at 921. Palka's unsupported conclusion of fact that he had a property right to remain employed as a Sheriff's Deputy is insufficient to properly plead a property interest in employment.

Palka next alleges that "The Sheriff's Department suspended Palka in violation of the

collective bargaining agreement because they did not call his union representative to be present during the de-deputization process and during a subsequent interview with IAD," and that "they also violated the contract by not giving Palka an answer concerning the so-called investigation that followed, within 30-days, and instead kept him in limbo under suspension until March of 2008 when they brought him up on charges before the Merit System Protection Board (MSPB) over the alleged phone call incident." Compl. ¶¶ 39, 40. Here, Palka simply states that he had a collective bargaining agreement and that the Defendants' violated that agreement; however, Palka's allegation that he had a collective bargaining agreement, without more, is insufficient to allege a property interest in his job. This is because a collective bargaining agreement is not a contract of employment and does not generally create a property interest in continued employment. *See Young v. N. Drury Lane Prods., Inc.*, 80 F.3d 203, 206 (7th Cir. 1996) ("a labor agreement is not a contract of employment; employees are hired separately and individually"). To demonstrate that his collective bargaining agreement created a federally protected property interest in his position as a Sheriff's Deputy, Palka would have had to allege that it made specific promises of continued employment or that it protected him from being fired except for cause. *See Krieg*, 481 F.3d at 520 (plaintiff must show that collective bargaining agreement made some specific promise of employment or contained a clause stating that employees may be discharged only for just cause to demonstrate that it creates a property interest). Palka, however, does not allege that his collective bargaining agreement gave him a right to continued employment and does not set forth any facts from which this Court could infer that his collective bargaining agreement provided him with a property interest in his position as a Sheriff's deputy.

Because a property interest is required to state a cause of action for a Due Process violation

9

and Palka has failed to allege facts from which a property interest can be conferred, Palka has failed to state a Due Process claim. *See e.g., Lee*, 862 F.2d at 141-42 (affirming dismissal of state employee's third amended complaint where plaintiff did not allege facts showing a property interest in her job); *Smith v. Bd. of Educ. of Urbana School Dist.*, 708 F.2d 258, 264-65 (7th Cir. 1983) (affirming dismissal for failure to state a claim where plaintiff's complaint did not allege facts from which a property interest in employment could be inferred). However, even if this Court were to find that Palka had pleaded a property interest, Palka's Due Process claim would nonetheless fail because his Complaint does not state facts sufficient to demonstrate a deprivation of a property interest without due process.

## ii. Deprivation of Property Right Without Due Process

If Palka had sufficiently plead a property interest then the Defendants could not deprive him of this property interest without due process. *See Loudermill*, 470 U.S. at 538. Palka asserts that he was denied both procedural due process and substantive due process. This Court will address each in turn.

### a. Procedural Due Process

The Due Process Clause guarantees fair procedure. *See Zinermon*, 494 U.S. 113, 125 (1990). In procedural due process claims, the deprivation by state action of a constitutionally protected property interest is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. *See Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."). Thus, even when there is a deprivation of a property interest, there is no violation of procedural due process actionable under § 1983 unless the

10

government fails to provide the due process. *See Zinermon*, 494 U.S. at 126. Therefore, to determine if a violation of procedural due process occurred, it is necessary to ask what process the Defendants provided, and whether it was constitutionally adequate. *See Id.* While due process is a flexible concept that varies with the particular situation, the Constitution requires some type of hearing before the government deprives a person of liberty or property. *See e.g., Loudermill*, 470 U.S. at 542 ("'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest'"; hearing required before termination of employment).

Palka first alleges that Defendants deprived him of procedural due process when they put him on paid suspension without a hearing. The problem with Palka's claim is that Palka acknowledges that he was put on paid suspension. Compl. ¶ 37. Because he was suspended with pay, Palka did not suffer any economic loss as a result of his suspension and non-pecuniary losses do not constitute property. *See Bordelon v. Chicago Sch. Reform Bd. Of Tr.*, 233 F.3d 524, 530 (7th Cir. 2000) ("[T]o recover for a deprivation of a property interest, [a plaintiff] must show some economic loss from the [government's] action, or at least an identifiable impact on his future income or economic benefits."). A suspension with pay, therefore, does not constitute a deprivation of a property right subject to federal constitutional protections. *See Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007) (citing *Dean v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005)) ("[A] job action that causes no pecuniary loss whatsoever does not implicate the Constitution."). Therefore, Palka did not have a due process right to a hearing prior to his paid suspension. *Luellen v. City of East Chicago*, 350 F.3d 604, 613 (7 th Cir. 2003) (suspension with pay, without a hearing, did not violate due process).

11

Palka next alleges that he was denied procedural due process when he was deprived of his property right to remain employed as a Sheriff's Deputy without a hearing. Compl. ¶ 59. However, Palka was never terminated by the Sheriff's Department, he resigned. In March 2008, the Sheriff's Department brought Palka up on charges before the MSPB over the alleged phone call incident. Compl. ¶ 40. After Palka was referred to the MSPB for termination, Palka was told that if he wanted to retire then the MSPB action would "go away" and that Palka would receive a retirement badge and his firearm credentials. Compl. ¶ 57. Palka was entitled to, and would have received a hearing on the charges that were filed with the MSPB but instead decided to take the Sheriff Department's offer and resign from his employment as a deputy sheriff. Compl. ¶ 52. Palka assertion that he had no choice but to resign does not turn his decision to resign into a formal discharge by the Sheriff's Department. Palka admits that certain allegations had been made against him, that investigations were taking place and that charges had been filed with the MSPB. Palka also admits that he was suspended, but paid, during his suspension. There is an inherent tension for any employee who is undergoing the kind of investigation that follows complaints of misconduct. Yet, no matter how uncomfortable the situation was for Palka, his situation is not comparable to intolerable working conditions in which a reasonable employee in his position would have felt compelled to resign. *See Levinstein v. Salafsky*, 414 F.3d 767, 775 (7th Cir. 2005) ("We conclude that a person who is on leave with pay . . . pending an investigation of serious job misconduct, who resigns rather than waits for the conclusion of reasonable prescribed due process procedures of the institution, has not from an objective standpoint been constructively discharged."). Therefore, even if Palka had stated a property interest in his employment as a Sheriff's Deputy (which he did not), he has failed to state a claim for a violation of his procedural due process.

12

### b. **Substantive Due Process**

Palka also contends that the Defendants violated his substantive due process when they abused their power by conducting a high priority investigation of Palka in the way that they did. Palka further contends that Defendants' decision to file formal charges against him and "push him out" was irrational because he had nothing to do with the making the threatening phone call to Tobias children's school. The scope of the protections afforded by substantive due process is limited, however, and applies only to decisions affecting fundamental rights. *See Belcher v Norton,* 497 F.3d 742, 752 (7th Cir. 2007). Substantive due process protects an individual from the exercise of governmental power without a reasonable justification. *Id.* at 753. Where the exercise of government power involves law enforcement officials, a plaintiff's substantive due process rights are violated where the alleged abuse of power "shocks the conscience." *Id.*

Here, the fundamental right at issue is Palka's claimed property right in continued employment. Employment rights, however, are state-created rights, and a public employee's interest in continued employment does not rise to the level of a "fundamental" right protected by substantive due process. *See Zorzi v. County of Putnam,* 30 F.3d 885, 895 (7th Cir. 1994) (stating that substantive due process does not protect occupational liberty). Where a plaintiff complains that he has been unreasonably deprived of a state-created property interest, to allege a substantive due process violation, the plaintiff must allege that the government's decision was arbitrary and irrational and that an additional constitutional violation occurred or that available state remedies were inadequate. *See Doherty v. City of Chicago,* 75 F.3d 318, 325 (7th Cir. 1996); *Kauth v. Hartford Ins. Co. of Illinois,* 852 F.2d 951, 958 (7th Cir. 1988) ("[I]n cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of

some other substantive Constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim.").

Palka's first alleges that the Defendants violated his substantive due process because they abused their authority when they conducted their investigation of him in the manner in which they did. Specifically, Palka contends that Defendants abused their authority when they used the Leads System to run his name, when they ran his driver license to check for outstanding warrants, when they went out of their jurisdiction to talk to him at his home, when they made false accusations against him regarding the alleged phone call and when they filed formal charges against him with the MSPB. However, as previously mentioned, to state a claim for a violation of his substantive due process Palka must allege facts that demonstrate that the Defendants' alleged abuse of power "shocks the conscience" and that their decisions were arbitrary and irrational. *See Belcher*, 479 F.3d at 752-53. Here, Tobias was given information by his children's school that someone had made a threatening phone call and inquired about his children. After learning this information Tobias contacted other individuals at the police department to help him investigate this alleged phone call. Tobias learned that the call was made by an individual with an Eastern European (Polish) accent. Palka, who is Polish, had recently approached Tobias because he was upset that his son was fired from the police academy. Tobias traced the phone call that was made to his children's school to a phone number belonging to a Cook County building. Tobias knew that Palka was a Cook County employee. When Tobias asked Andrews and Salemme to further investigate the matter, Andrews and Salemme went to Palka's house to ask him questions surrounding the alleged phone call.

Before formal charges were filed against Palka with the MSPB, Tobias opened up a CPD report and filed a General Complaint Register against Palka with the Sheriff Department's IAD.

14

Tobias alleged that Palka called his children's school inquiring if they were present and put him, his wife and the schools staff in reasonable fear that Palka was stalking his children and that he had intentions of possibly harming them.

These facts as pleaded demonstrate that Tobias had reason to conduct an investigation into the threatening phone call that was made to his children's school and to enlist the Police Department to assist in the investigation. Even if the Defendants abused their official authority while conducting the investigation by going outside their jurisdiction to question Palka or by using the Leads System to run his name, these alleged abuses of power are not sufficient for Palka show that the Defendants' violated his substantive due process rights. This is because Defendants' alleged abuses of power do not describe conduct that amounts to a constitutional violation, the alleged conduct is not "conscience shocking." *See e.g.*, *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) ("every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation"). Taking Palka's allegations as true, Defendants' decision to file formal charges against Palka with the MSPB was not arbitrary or irrational because Palka himself alleges that the investigation was initiated as a result of the threatening phone call. Palka allegations do not rise to the level of an abuse of power by Tobias that was "conscious shocking."

Additionally, Palka has failed to allege the inadequacy of state remedies and has not alleged that any of his other substantive Constitutional rights were violated. *See Doherty v. City of Chicago*, 75 F.3d 318, 325 (7th Cir. 1996); *Kauth*, 852 F.2d at 958. Therefore, even if Palka had a property interest in his continued employment, he has failed to state a claim for a violation of his substantive due process.

15

## B. Occupational Liberty Claim

Palka next raises a Fourteenth Amendment claim, alleging a deprivation of his occupational liberty interest in his career as a Sheriff's Deputy and a law enforcement officer. Specifically, Palka contends that all of the Defendants deprived him of his "property right to remain employed as a Sheriff's Deputy with a gold badge" and his "property right to obtain another law enforcement job, depriving him of a chance to earn his chosen livelihood, in violation of the Constitution of the United States." Compl. ¶ 59.

The concept of liberty protected by the Due Process Clause includes one's occupational liberty, or "the liberty to follow a trade, profession, or other calling." *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992). The government violates an employee's occupational liberty interest when, in the course of discharge, failure to rehire, or other adverse employment action, the employer stigmatizes the employee by making public comments that impugn "the individual's good name, reputation, honor, or integrity" or impose a "stigma or other disability on the individual which forecloses other opportunities." *Roth*, 408 U.S. at 573. The Fourteenth Amendment protects only the individual's liberty to pursue a particular occupation, however, and not the individual's right to any one job. *See Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001).

To sufficiently plead the deprivation of an occupational liberty interest, Palka must allege: (1) that the Defendants made stigmatizing comments about him; (2) that the comments were publicly disclosed; and (3) that he suffered a tangible loss of other employment opportunities as a result. *See Townsend*, 256 F.3d at 669-70.

### I. Stigmatizing Comments and Public Disclosure

To be actionable, statements made by a public official must be false assertions of fact; neither

16

"true but stigmatizing" statements nor "statements of opinion, even stigmatizing ones" will suffice to meet this standard. *Strasburger v. Bd. of Educ. Comm. Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998). Not every comment that could damage an individual's reputation is actionable; however, the Fourteenth Amendment only protects against those comments that could seriously damage one's reputation and standing in the community. *See Ulichny v. Merton Comm. Sch. Dist.*, 249 F.3d 686, 705 (7th Cir. 2001).

After a plaintiff has demonstrated that a defendant made stigmatizing statements, he must allege that the statements were publically disclosed. *See e.g. Townsend*, 256 F.3d at 669-70; *Harris v. City of Auburn*, 27 F.3d 1284, 1286 (7th Cir. 1994) (deprivation of occupational liberty that was "virtually devoid of any information regarding the public disclosure" of the statements was insufficient to state a claim); *Clark v. Maurer*, 824 F.2d 565, 567 (7th Cir. 1987) (no injury until the damaging information is made public); *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1349 (7th Cir. 1995) ("[T]he government must have actually participated in disseminating the information to the public").

Here, Palka's Complaint alleges that on May 11, 2007, Tobias falsely and without a reasonable basis complained to the Sheriff's Department IAD, in a General Complaint Register, that Palka telephoned the church office of his children's school to inquire if Tobias' children were present. Tobias falsely told the IAD, and included in the Complaint Register, that Palka's telephone call to the school put members of the church staff and Tobias' wife in fear that Palka was attempting to stalk Tobias' children, that Tobias feared that Palka had intentions of harming his children, that Palka had caused the principal and the teaching staff at the school to be in fear for the safety and well-being of Tobias' children, and that Palka had made numerous attempts to adversely impact Tobias' position with the CPD in retribution for recommending the employment discharge of his son

17

Peter Palka. Palka also alleges that Tobias told Andrews, Salemme, Roti and other police officers that a threatening phone call was made to his children's school and asked them to help him investigate the incident. Finally, Palka alleges that on September 5, 2007, the IAD unit of the Sheriff's Department met with the Cook County State's Attorney's Office and told them about the phone call incident.

Palka has pled sufficient facts to allege that Defendants' allegations against him were stigmatizing. Allegations that an individual engaged in criminal conduct, if false, may injure an individuals good name, damage an individual's reputation in the community and be considered stigmatizing. *See e.g. Ratliff v. City of Milwaukee*, 795 F.2d 612, 626-27 (7th Cir. 1986) (allegations that plaintiff was untruthful, failed to obey orders, neglected her duties and was insubordinate were stigmatizing). Here, Palka alleges that the Defendants accused him of making a threatening phone call to Tobias' children's school in an attempt to stalk them and Palka maintains that these allegations are false.

Palka's Complaint does not, however, allege that Defendants publically communicated these stigmatizing comments. Palka's Complaint only alleges that the Defendants communicated these allegations to individuals within the CPD, the Sheriff's Office and the State's Attorney's Office. Allegations against an individual are not made public for purposes of satisfying the public disclosure requirement for a violation of a liberty interest if the allegations are only communicated internally. *See e.g. Ratliff*, 795 F.2d at 627 (no public disclosure, and therefore no deprivation of a liberty interest where defendants did not publicize the reasons for discharge beyond the proper chain of command within the police department); *Johnson v. Martin*, 943 F.2d 15 (7th Cir. 1991) (no public disclosure when potentially stigmatizing information in a discharged employee's personnel file that

18

had not been disseminated beyond the proper chain of command in the police department and had not been made public). Because Palka's Complaint does not allege that Tobias or any of the Defendants disclosed any information concerning Palka to anyone other than the Sheriff's Department, the CPD and the States Attorney's Office, he has failed to plead that the Defendants' publically disclosed the purported stigmatizing information. Public disclosure is required to show a deprivation of an occupational liberty interest. Therefore, Palka has failed to state a claim for a deprivation of his occupational liberty.[2]

## II. Monell Claim

In his Third Amended Complaint, Palka seeks to hold Cook County and the City liable for his alleged Constitutional violations. A municipal government, however, cannot be held liable under §1983 "unless the deprivation of constitutional right is caused by municipal policy or custom." *Kujawski v. Board of Comm'rs of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir. 1999). To support his Monell Claim, Palka alleges Defendants have a widespread practice of "intimidation, harassment and retaliation of anyone who crosses ADS Tobias or anyone at the Deputy Superintendent or Commander level at the CPD, and that the Sheriff's Department gives inordinate attention to the unsubstantiated complaints against its employees by anyone who is a "big wheel" at the C.D." Compl. ¶ 61. This Court does not need to address if Palka has adequately pleaded a widespread policy or practice because Palka has not alleged a policy or practice that results *in a deprivation of a Constitutional right*. (Emphasis added). Further, as set forth above, Palka has failed

---

[2]Because Palka has failed to satisfy the public disclosure requirement necessary to establish a deprivation of an occupational liberty interest, this Court does not need to address the third requirement that Palka allege facts sufficient to show that he suffered a tangible loss of other employment opportunities as a result of publically disclosed stigmatizing comments. *See Townsend*, 256 F.3d at 669-70.

19

to allege facts sufficient to state a claim for a violation of due process and has failed to state a claim for a deprivation of occupational liberty, therefore to the extent that Palka bases his Monell Claim on the alleged constitutional deprivations stated in his Complaint, he also fails to allege the deprivation of a Constitutional right. Therefore, Palka has failed to state a Monell Claim and it is dismissed.

## CONCLUSION AND ORDER

For the reasons stated, Defendants' Motions to Dismiss Palka's Third Amended Complaint are granted with prejudice.

So ordered.

Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: 12/17/08